# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SURGERY CENTER OF VIERA, LLC,**

        **Plaintiff,**

**v.**                                                              **Case No:  6:17-cv-753-Orl-40DCI**

**ROCKWELL COLLINS, INC.,**
**WELLMARK, INC., ROCKWELL**
**COLLINS, INC. EMPLOYEE HEALTH**
**PLAN and ROCKWELL COLLINS**
**EMPLOYEE BENEFIT PLAN**
**COMMITEE,**

        **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court for consideration following oral argument on the following motions:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS, ROCKWELL COLLINS, INC., ROCKWELL COLLINS, INC. EMPLOYEE HEALTH PLAN, AND ROCKWELL COLLINS EMPLOYEE BENEFIT PLAN COMMITTEE'S MOTION TO DISMISS (Doc. 29)** |
| **FILED:** | November 13, 2017 |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

| | |
|---|---|
| **MOTION:** | **DEFENDANTS BCBS' MOTION TO DISMISS (Doc. 44)** |
| **FILED:** | November 13, 2017 |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

**I.     Introduction**

This matter is before the undersigned to consider two motions to dismiss the Amended Complaint for a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Docs. 29; 44.  For the reasons set forth in this Report, the undersigned respectfully recommends that the Amended Complaint be dismissed with prejudice because Plaintiff's ability to bring this Employee Retirement Income Security Act of 1974 (ERISA) action is precluded by a valid anti-assignment provision contained within the plan documents.

**II.    Procedural Background**

On April 26, 2017, Plaintiff, the operator of a surgical center in Melbourne, Florida, filed a Complaint alleging three claims against Defendants pursuant to ERISA, all related to the treatment of a patient (Patient PD) by Plaintiff.  Doc. 1.  On July 19, 2017, Defendant Rockwell Collins, Inc. (Rockwell) filed a motion to dismiss (Doc. 12) the Complaint, along with a memorandum of law (Doc. 13) that contained, amongst other attachments, the ERISA plan at issue (Doc. 13-1).  On August 16, 2017, Plaintiff filed the Amended Complaint (Doc. 27), which remains the operative complaint in this case.  Shortly thereafter, the Court denied the first motion to dismiss as moot.  Doc. 30.

**III.   Allegations in the Amended Complaint**

According to the allegations in the Amended Complaint, which the Court takes as true for purposes of this Report, Rockwell provided healthcare insurance to its employees (including Patient PD) through a self-insured welfare benefit plans.  Defendant Rockwell Collins Employee Benefit Plan Committee (Plan Administrator) was a committee of Rockwell employees appointed as Plan Administrator for the Plan.  Defendant Wellmark, Inc., d/b/a Blue Cross and Blue Shield of Iowa (BCBS) was a healthcare insurance company that provided administrative services to

Rockwell for the Plan. Defendant Rockwell Collins, Inc. Employee Health Plan (the Plan) was the self-insured employee welfare benefit plan sponsored by Rockwell and administered by BCBS and the Plan Administrator.[1]

On November 7, 2014, Patient PD received medical services from Plaintiff. Patient PD was covered under the terms of the Plan. Plaintiff was an out of network provider in relation to the Plan. In exchange for medical services, Patient PD gave Plaintiff an assignment of benefits owed to Patient PD under the Plan. *See* Doc. 27-1. In relation to the assertion of any ERISA claim, Patient PD agreed in the assignment to "promptly furnish information to, and otherwise cooperate reasonably with Provider, in its assertion of any such claim." *Id*. at 1. After providing medical services to Patient PD, Plaintiff submitted a bill to BCBS for the amounts charged to Patient PD, i.e. $254,508.00.

On January 29, 2015, BCBS notified Plaintiff that BCBS would only pay Plaintiff $30,471.48 for the medical services provided to Patient PD. *See* Doc. 27-3. On February 11, 2015, Plaintiff filed an initial appeal of the claim denial. *See* Doc. 27-4. On May 11, 2015, Plaintiff filed a second appeal with BCBS and a request for documents. *See* Doc. 27-5. On July 5, 2016, Plaintiff filed a third and final appeal and request for documents, this time to Rockwell, the Plan Administrator, and BCBS. *See* Doc. 27-6. Plaintiff alleged that in response to Plaintiff's appeals, Defendants have not issued payment for the unpaid amounts and have not provided Plaintiff with the Plan documents. Thus, Plaintiff alleged that "Plaintiff has exhausted all of its administrative requirements under ERISA to the best of its ability, despite lack of meaningful access to Plan documents."

---

[1] Although Plaintiff specifically referenced the Plan in the Amended Complaint, Plaintiff did not attach the Plan to that pleading. The Plan is attached to the Defendants' motions to dismiss. *See* Docs. 29-1; 44-1.

In the Amended Complaint, Plaintiff alleged three claims pursuant to ERISA. In Count I, Plaintiff brought a claim pursuant to ERISA § 502(a)(1)(b) and 29 U.S.C. § 1132(a)(1)(B), alleging that it is entitled to enforce the rights, terms, and conditions of the Plan as an assignee of Patient PD and, as such, Plaintiff is entitled to recover benefits due to Patient PD under the Plan. In the alternative, Plaintiff asserted that it is entitled to assert the rights of Patient PD under the Plan because Plaintiff is an authorized representative of Patient PD. Plaintiff further alleged that Defendants breached the terms of the Plan by, amongst other things, failing to make payments and failing to provide a full and fair review of the claim at issue. As a result, Plaintiff seeks damages in the amount of $224,036.52 against Defendants. In Count II, Plaintiff brought a claim for breach of fiduciary duty pursuant to ERISA § 502(a)(3) and 29 U.S.C. § 1132(a)(3) against all Defendants. Again, Plaintiff sought relief both as an assignee and, alternatively, as a personal representative of Patient PD. In Count II, Plaintiff seeks "appropriate equitable relief and all other damages and costs the Court deems appropriate." In Count III, Plaintiff brought a claim seeking civil penalties against Rockwell, the Plan, and the Plan Administrator (the Rockwell Defendants) pursuant to ERISA § 502(c) and 29 U.S.C. §1132(c)(1)(B) in relation to those Defendants alleged failure to provide requested documents, including the "master governing plan document."

### IV.   The Motions to Dismiss

On August 30, 2017, the Rockwell Defendants filed a motion to dismiss the Amended Complaint. Doc. 29. The Rockwell Defendants attached to their motion, amongst other things, the Plan document. Doc. 29-1. The Plan document included the following anti-assignment provision:

> **No Assignments**. Unless specifically permitted by a Program Document, **the right of any Covered Person to receive any benefits under the Plan will not be alienable by assignment**. The right of any Covered Person to receive any benefits under the Plan will not be subject to any claims by any creditor of or claimant

>against the Participant; and any attempt to reach such amounts by any such creditor or claimant, or **any attempt by the Participant to confer on any such creditor or claimant any right or interest with respect to such amounts, will be null and void**, except as provided in Section 609 of ERISA with respect to QMCSO.  No Compensation reduction elections or other contributions under this Plan will cause any Participating Employer to be liable for, or subject to, any manner of debt or liability of any Covered Person.

Doc. 29-1 at 60 (emphasis added).  Accordingly, the Rockwell Defendants, citing to controlling Eleventh Circuit precedent, asserted in the motion that the anti-assignment clause was valid and barred this ERISA action by Plaintiff.  Further, the Rockwell Defendants asserted that Rockwell is not estopped from asserting that anti-assignment provision and Plaintiff does not otherwise have alternative derivative standing as alleged in the Amended Complaint.  Thus, the Rockwell Defendants requested that the Court dismiss the Amended Complaint with prejudice in its entirety.  In addition, the Rockwell Defendants asserted that the individual claims should be dismissed for various reasons.

On November 13, 2017, BCBS filed its motion to dismiss that, in most relevant respects, made the same arguments for the dismissal of the Amended Complaint, both in whole due to the anti-assignment clause, and as to the individual claims for various other reasons.  Doc. 44.

Plaintiff filed responses to each of the motions to dismiss, although Plaintiff made essentially the same arguments in both responses.  Docs. 32; 47.  Plaintiff first asserted that the assignment provision is valid.  Plaintiff then argued, relying primarily on Eighth Circuit case law, that the anti-assignment clause is not specific enough and must explicitly bar assignment of causes of action – not just benefits – in order to be valid.  Next, Plaintiff claimed, relying primarily on Fifth Circuit case law, that Defendants are estopped from asserting the anti-assignment clause because Defendants paid a portion of the billed amount and corresponded with Plaintiff in regards

to the administrative appeal without raising the anti-assignment provision. Finally, Plaintiff addressed the various challenges to the individual counts.

Both the Rockwell Defendants and BCBS filed authorized replies. Docs. 37; 56. On January 23, 2018, the Court held a hearing on this matter. Doc. 61.

V. **Legal Standard**

Here, Defendants moved to dismiss based on a lack of standing, but "the 'standing' at issue here is not the standing label given to the subject-matter-jurisdictional doctrine of justiciability which considers injury, traceability to the defendant, and redressability." *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293-94 (11th Cir. 2004); *see Griffin v. Habitat for Humanity Int'l, Inc.*, 641 F. App'x 927, 929-30 (11th Cir. 2016) ("Although courts have long applied the label of "statutory standing" to the basis for decisions [that a plaintiff] lacked standing under ERISA, the Supreme Court has cautioned that this label is 'misleading' because the court is not deciding whether there is subject matter jurisdiction but rather whether the plaintiff 'has a cause of action under the statute.'") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ⸺ U.S. ⸺, 134 S. Ct. 1377 (2014)).[2] "To maintain an action under ERISA, a plaintiff must have standing to sue under the statute, which is not jurisdictional, Article III standing, but a right to make a claim under the statute." *Griffin v. Coca-Cola Enterprises, Inc.*, 686 F. App'x 820, 821–22 (11th Cir.), *cert. denied*, 138 S. Ct. 237, 199 L. Ed. 2d 122 (2017), *reh'g denied*, 138 S. Ct. 441, 199 L. Ed. 2d 326 (2017). Thus, the

---

2

In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

inquiry here is whether Plaintiff stated a claim pursuant to Rule 12(b)(6). *See, e.g.*, *Griffin v. Habitat for Humanity*, 641 F. App'x at 929-30.

In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Further, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

Further, on a Rule 12(b)(6) motion, the court is generally "limited to the four corners of the complaint." *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). If the motion relies on matters outside the pleadings, then ordinarily, the court will convert the motion to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). But, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the

motion into a motion for summary judgment." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see Griffin v. Publix Super Markets, Inc.*, No. 8:16-cv-01243-T-27-AEP, 2016 WL 8999466, at *2 (M.D. Fla. Aug. 2, 2016) ("Plaintiff did not attach the Plan to her complaint. Notwithstanding, it may be considered because it is central to the complaint and Plaintiff makes reference to it."). Here, Plaintiff did not attach a copy of the Plan, which contains the anti-assignment clause, to the Amended Complaint. Instead, Defendants attached a copy to their motions to dismiss. Docs. 29-1; 44-1; *see also* Doc. 13-1 (also attached to the first, mooted motion to dismiss). Plaintiff has not disputed the authenticity of the Plan attached to the motions to dismiss, and has not objected to the Court's consideration of the Plan documents. Because Plaintiff alleges that Defendants breached the Plan, the undersigned finds that the Plan documents are central to Plaintiff's claim, there is no dispute as to their authenticity, and they may be considered by the Court without converting the motion to dismiss to a motion for summary judgment.

## VI. Discussion

"Two categories of persons may sue for benefits under an ERISA plan: plan beneficiaries and plan participants." *Griffin v. Coca-Cola*, 686 F. App'x at 821-22 (citing 29 U.S.C. § 1132(a)(1)(B)). The Eleventh Circuit has explained that

> Section 502(a) of ERISA provides that only plan participants and plan beneficiaries may bring a private civil action to recover benefits due under the terms of a plan, to enforce rights under a plan, or to recover penalties for a plan administrator's failure to provide documents. 29 U.S.C. § 1132(a)(1), (c). This provision also limits the right to sue for breach of fiduciary duty to plan participants, plan beneficiaries, plan fiduciaries, and the Secretary of Labor. *Id.* § 1132(a)(2). Additionally, only plan participants, plan beneficiaries, and plan fiduciaries may bring a civil action to obtain equitable relief to redress a practice that violates ERISA or the terms of a plan. *Id.* § 1132(a)(3).

*Griffin v. Habitat for Humanity*, 641 F. App'x at 930. "Healthcare providers are typically not 'participants' or 'beneficiaries,' so they lack independent standing, but they may obtain derivative standing through a written assignment from a beneficiary or participant." *Griffin v. Coca-Cola*, 686 F. App'x at 821-22. "Because ERISA-governed plans are contracts, the parties are free to bargain for certain provisions in the plan—like assignability." *Physicians Multispecialty*, 371 F.3d at 1296; *see Griffin v. Habitat for Humanity*, 641 F. App'x at 930) ("We have recognized that "[h]ealthcare providers may acquire derivative standing ... by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan.") (citing *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir. 1997) (explaining that "neither the text of § 1132(a)(1)(B) nor any other ERISA provision forbids the assignment of health care benefits provided by an ERISA plan")). Further, the assignment "of the right to payment for medical benefits, [] also conveys the right to file an action under section 502(a) of ERISA for unpaid benefits." *Griffin v. Coca-Cola*, 686 F. App'x at 821-22 (citing *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352-53 (11th Cir. 2009)).

However, the Eleventh Circuit has long held that "an unambiguous anti-assignment provision in an ERISA-governed welfare benefit plan is valid and enforceable." *Id*. Such an anti-assignment provision "will operate to void the assignment," and "[i]f there is such an unambiguous anti-assignment provision, the healthcare provider will lack derivative standing and cannot maintain the ERISA action." *Griffin v. Coca-Cola*, 686 F. App'x at 821-22; *see Griffin v. Habitat for Humanity*, 641 F. App'x at 930 (finding that "when a plan contains an unambiguous anti-assignment provision, a plan participant or beneficiary may not assign benefits to a healthcare provider, meaning the healthcare provider cannot acquire a cause of action under section 502(a)").

As an initial matter, Defendants do not challenge the validity of the assignment clause. Thus, for the purposes of this Report, the undersigned considers that the assignment clause at issue is valid – absent a valid anti-assignment clause. However, as set forth in the following paragraphs, the undersigned finds that the anti-assignment clause is valid as well, Defendants are not estopped from asserting the anti-assignment clause, and Plaintiff does not have "alternative standing." Accordingly, the undersigned respectfully recommends that the Amended Complaint be dismissed with prejudice. Because that recommendation is case dispositive, the undersigned has not addressed the remaining bases upon which Defendants seek to dismiss the Amended Complaint or the individual claims therein.

### a. *The Anti-Assignment Clause is Valid*

In considering whether the Plan's anti-assignment clause is unambiguous (and thus valid), the Court is guided not only by the plain language of the clause, but also by the Eleventh Circuit's consideration of the anti-assignment clauses in *Physicians Multispecialty*, *Griffin v. Habitat for Humanity*, and *Griffin v. Coca-Cola*, in all of which the Circuit determined that the anti-assignment provision was unambiguous. In *Physicians Multispecialty*, the Circuit found that the following anti-assignment clause was clear and unambiguous: "[e]xcept as applicable law may otherwise require, no amount payable at any time ... shall be subject in any manner to alienation by ... assignment ... of any kind [ ]." 371 F.3d at 1296. In *Griffin v. Habitat for Humanity*, the Circuit found that the insured's assignments to her healthcare provider were void due to the following anti-assignment clause: "Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by ... assignment.... Any attempt to ... assign ... any such amount, whether presently or hereafter payable, shall be void." 641 F. App'x at 931. And in *Griffin v. Coca-Cola*, the Circuit found that the following anti-assignment

clause was unambiguous: "Members cannot legally transfer the coverage. Benefits under [the plan] are not assignable by any member without obtaining written permission" from the plan administrator. 686 F. App'x at 822.

Here, the Plan contained an anti-assignment clause titled "No Assignments" that provided that, "Unless specifically permitted by a Program Document, the right of any Covered Person to receive any benefits under the Plan will not be alienable by assignment." Doc. 29-1 at 60 (¶ 14.03 of the Plan). That provision is unambiguous on its face. And comparing it to other anti-assignment clauses that the Eleventh Circuit has already deemed unambiguous provides further support for the conclusion that the anti-assignment clause at issue here is clear and unambiguous.

In its responses to the motions to dismiss, Plaintiff did not attempt to distinguish *Physicians Multispecialty*, and failed entirely to cite or discuss *Griffin v. Habitat for Humanity* and *Griffin v. Coca-Cola*. That failure – given two opportunities to respond, one for each motion – seems a tacit admission as to the validity of the anti-assignment provision. Instead, Plaintiff cited to a case from the Eighth Circuit for the propositions that an anti-assignment clause "will not nullify a patient's assignment to a hospital or physician" and "must explicitly prohibit the assignment of causes of action arising after the denial of benefits to bar a cause of action." Docs. 32 at 6; 47 at 6 (citing *Lutheran Medical Center of Omaha, Nebraska v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994), abrogated on other grounds by *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966 (8th Cir. 2002)). To the extent that *Lutheran Medical Center* actually stands for those propositions, it has not been followed in this Circuit, as is clear from the decisions in *Physicians Multispecialty*, *Griffin v. Habitat for Humanity*, and *Griffin v. Coca-Cola*. Thus, the undersigned finds Plaintiff's reliance on those cases unpersuasive. Plaintiff also argues that the anti-assignment clause is "not specific enough," but cites no authority

actually supporting that proposition. To the extent that Plaintiff argues that the anti-assignment is not specific enough because it does not contain a list of exactly what kinds of legal recourse it bars or a statement that it applies explicitly to health care providers, those arguments are undermined by the weight of authority in this Circuit, which does not require that level of specificity from an unambiguous anti-assignment clause. *See Physicians Multispecialty*, 371 F.3d at 1296.

Thus, the undersigned finds the anti-assignment clause, which barred the assignment of "the right . . . . to receive any benefits under the Plan," to be unambiguous. That said, the anti-assignment clause is valid and Plaintiff's assignment is not enforceable. Thus, Plaintiff cannot bring this ERISA action.

### b. *Defendants Are Not Estopped from Asserting the Anti-Assignment Clause*

In an effort to avoid dismissal if the Court did find the anti-assignment clause to be valid, Plaintiff argued that Defendants are estopped from relying upon the anti-assignment clause. In sum, Plaintiff argued that because Defendants did not assert the anti-assignment clause during the administrative proceedings, they cannot now assert it. In support of that proposition, Plaintiff relied upon a circuit and district court case from the Fifth Circuit: *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 959 F.2d 569, 574-75 (5th Cir. 1992) *overruled in part by Access Mediquip, L.L.C. v. United Healthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) and *Shelby Cty. Health Care Corp. v. Genesis Furniture Indus., Inc.*, 100 F. Supp. 3d 577, 581-82 (N.D. Miss. 2015). In *Hermann Hosp.*, the Fifth Circuit held that an "ERISA Plan was estopped from enforcing its [non]-assignment clause because of the Plan's protracted failure to assert [non]-assignment when the hospital requested payment under an assignment of payment provision for covered benefits." *Shelby Cty. Health Care*, 100 F. Supp. 3d at 581. Defendants, on the other hand, contend that they had no basis to raise the anti-assignment provision prior to this litigation.

In *Griffin v. Habitat for Humanity*, the Circuit, faced with a similar argument, explained the concept of estoppel in the ERISA context as follows:

> Under ERISA equitable estoppel applies only when "the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). Because the anti-assignment provision is unambiguous, equitable estoppel cannot apply here.

641 F. App'x at 932. Similarly here, because the anti-assignment clause is unambiguous, equitable estoppel cannot apply. Further, Plaintiff alleged no facts that "the plan provider or administrator [] made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Id.*; *see Griffin v. Coca-Cola*, 686 F. App'x at 822. And Plaintiff has alleged no facts that would otherwise arguably support their estoppel argument, such as the protracted delay at issue in *Hermann Hosp*. In addition, although it appears from the record that Plaintiff did not actually have a copy of the anti-assignment clause until the plan documents were attached to the motions to dismiss in this litigation, the assignment from Patient PD to Plaintiff included an obligation for Patient PD to render Plaintiff whatever assistance Plaintiff may require in relation to the assignment. Thus, there is no dispute that Plaintiff could have obtained the plan documents – which included the anti-assignment clause – from Patient PD at any time: before or after Plaintiff elected to perform the medical procedure on Patient PD. Instead of obtaining those plan documents from its patient, Plaintiff chose to perform the medical procedure, try to obtain payment from Defendants, appeal the administrative denial for the total amount billed, and bring this action – all prior to obtaining the plan documents from Patient PD. Further, the undersigned agrees that Defendants had no occasion to assert the anti-assignment clause prior to this litigation. *See Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012) ("Defendant would have had no occasion to assert the anti-assignment clauses when Plaintiff's

previously demand payment. . . . As such, Plaintiff's reliance on *Herman[n] Hospital* is misplaced, and there is no basis to estop Defendant from asserting the clauses."). Thus, the undersigned finds that Defendants should not be estopped from asserting the valid anti-assignment provision.

### c. *Plaintiff Does Not Have "Alternative" Standing*

Finally, Plaintiff asserted both in the Amended Complaint and in the responses to the motions to dismiss that it has "alternative" derivative standing, in that Plaintiff may bring this action as an "authorized representative" of Patient PD. *See, e.g.*, Doc. 47 at 5. In support, Plaintiff argued by analogy to the Patient Protection and Affordable Care Act (PPACA), which, according to Plaintiff, recognizes the ability of a health care provider, such as Plaintiff, to serve as a patient's authorized representative during the appeal of an adverse benefit determination. *Id*. Plaintiff cited no case law for this proposition and candidly admitted, at the hearing in this matter, that there is no such support for this proposition. In fact, there is no "alternative" ERISA standing recognized in this Circuit. Where, as here, there is "an unambiguous anti-assignment provision, the healthcare provider will lack derivative standing and cannot maintain the ERISA action." *Griffin v. Coca-Cola*, 686 F. App'x at 821-22. Thus, the undersigned finds that Plaintiff's assertion that it has "alternative" derivative standing is not well-taken.

### VII. Conclusion

Accordingly, upon due consideration of the parties' filings and the argument at the hearing in this matter, it is respectfully **RECOMMENDED** that:

1. The Rockwell Defendants' motion to dismiss (Doc. 29) be **GRANTED**;

2. BCBS' motion to dismiss be **GRANTED** (Doc. 44);

3. The Amended Complaint be **DISMISSED with prejudice**; and

4. The Clerk be directed to close the case.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 31, 2018.

*(signature)*
DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy